UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
MATTHEW KREEK                                                        :   18-CV-12154 (LTS)(OTW)
:
                                        Plaintiff,                   :
:   **FIRST AMENDED COMPLAINT**
            -against-                                                :
:
POLICE OFFICERS ROBERT HUMANN; PAUL                                  :   JURY TRIAL DEMANDED
MONDONE, ALLYSSA HAYESMAN, DANIEL                                    :
GRAVITCH; CAPT. DANIEL MIRAGLIA; TIMOTHY                             :
CRAFT; RYAN NORMAN; ROBERT MCGEE;                                    :
JAMES COLL; and "JOHN DOES" 1-3 (the names                           :
John Doe being fictitious, the real names being                      :
currently unknown)                                                   :
:
                                        Defendants.                  :
-------------------------------------------------------------------- X

Plaintiff MATTHEW KREEK, by and through his attorneys, **THE LAW OFFICES OF KENNETH F. SMITH, PLLC**, complaining of the defendants herein, respectfully shows the Court and alleges:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiff seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983; by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2. The claims arise from a June 27, 2017 incident in which members of the New York City police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Plaintiff to, *inter alia*, warrantless and unlawful entry, unlawful destruction and seizure of property, excessive and unjustified use of force, false arrest, failure to intervene, first amendment violations, and malicious prosecution.

1

3. The Plaintiff seeks monetary damages (special, compensatory and punitive) against defendants, as well as an award of attorney's fees and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343 and 1367(a).

5. The Plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

6. Venue herein is proper for the United States District Court for the Southern District of New York under 28 U.S.C. §1391 (a), (b) and (c), in that the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action.

## PARTIES

8. Plaintiff MATTHEW KREEK is a forty-five-year-old male who at all times hereinafter mentioned was and is a resident of the State of New York.

9. Defendants police officers ROBERT HUMANN (tax no. xx6749); PAUL MONDONE (tax no. xx8020); ALLYSSA HAYESMAN (shield no. 17070); DANIEL GRAVITCH (shield no. 1162); CAPT. DANIEL MIRAGLIA (shield no. unknown); TIMOTHY CRAFT (shield no. 5161); RYAN NORMAN (tax no. xx4029); ROBERT MCGEE (tax no. xx3983); JAMES COLL (tax no. xx8865); and police officers "JOHN

DOES[1]" 1-3 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the City of New York ("CITY"), specifically, the New York City Police Department ("NYPD").

10.  Defendants Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*Does 1-3*" are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of the CITY, were acting for, and on behalf of, and with the power and authority vested in them by the CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11.  The defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

12.  On June 27, 2017, approximately 4AM, Plaintiff, who was asleep in in his bed, was awakened by the sound of pounding on the entrance door of his apartment.

13.  Plaintiff opened the door and observed two NYPD officers at his door, and had a brief conversation with them.

14.  Said police officers asked Plaintiff for permission to enter his apartment to "speak with" Plaintiff.

15.  Plaintiff asked if the officers had a warrant, and then, when they stated they did not, Plaintiff said he would not allow them to enter the apartment, and closed and locked the door before returning to bed.

---

[1] The names "John Doe" being fictitious, the real names being presently unknown.

16.     Shortly thereafter, Plaintiff was startled to hear voices coming from the back yard area and observed shadowy figures—later revealed to be NYPD officers, manipulating his windows and doors.

17.     Defendant NYPD officers then used a cutting object to cut through the window screens in the windows of Plaintiff's apartment, damaging said window screens.

18.     Plaintiff used his cell phone, equipped with video recording capability, to record the actions of the defendant officers' outside the windows.

19.     One of the above defendant police officers reached into Plaintiff's apartment and grabbed Plaintiff's cellphone from his hands as Plaintiff was recording the actions of the defendant officer.

20.     Said defendant police officer then handed Plaintiff's phone to another defendant officer—presumably a ranking officer—and, as the two men discussed what to do with the phone, Plaintiff then heard the order "delete it" (the video footage Plaintiff had just taken).

21.     Plaintiff then retrieved a second, backup cell phone which also had video recording capability,

22.     Defendant NYPD officers then used force to break the window locks on the windows of Plaintiffs apartment, causing damage to the windows.

23.     Defendant NYPD officers then pointed a type of firearm through one of Plaintiff's windows and shot a tranquilizer dart at Plaintiff's dog, Rawlin.

24.     Plaintiff observed his dog, Rawlin yelping in pain and observed a tranquilizer dart stuck into Rawlin's chest area.

25. During the foregoing, one or more of the defendant police officers who was in the back yard conversed with Plaintiff, calling him "Matt" and "Matty".

26. Plaintiff repeatedly asked said defendant police officer for his name but said defendant police officer refused to reveal his name to Plaintiff.

27. Instead, said defendant police officer responded coyly to Plaintiff's question: "what is your name officer?" by asking Plaintiff (who said officer had already referred to by name) what's *your* name.

28. Defendant NYPD officers then forcibly broke into and through the doors separating Plaintiff's apartment from the back yard area, causing damage to said door, and entered said apartment.

29. Defendant NYPD officers also forcibly broke into and through Plaintiff's main entry door, causing damage to said door.

30. Defendant NYPD officers then pulled Plaintiff from his bed, where he had been cowering in fear, and slammed him forcefully onto the floor.

31. Defendant NYPD officers then held Plaintiff, face-down, on the floor while additional defendant officers inflicted blows upon Plaintiff, repeatedly kicking and stomping on him.

32. Defendant NYPD officers then forcibly removed Plaintiff's cell phone (which Plaintiff had been using to videotape defendant officers) from his hand, and turned it off.

33. Plaintiff heard one defendant officer order another officer to "delete it" (the footage plaintiff had just taken of defendants) and said defendant officer deleted or attempted to delete the footage.

34. Defendant NYPD officers then handcuffed Plaintiff tightly and then forcibly removed him from his apartment.

35. Besides the damage to Plaintiff's doors and windows occasioned by the defendant NYPD officers, said defendant officers also thoroughly upended and damaged Plaintiff's apartment, emptying the contents of drawers and an armoire, upending furniture, breaking into a locked closet, and upending trash cans and strewing garbage throughout the apartment.

36. Defendant NYPD officers falsely stated to responding EMS workers that Plaintiff was "emotionally disturbed" and needed to be transported for psychiatric observation and/or treatment.

37. Still handcuffed, Plaintiff was transported to the Bellevue Hospital Psychiatric ward for psychiatric observation and/or treatment.

38. While at the hospital, defendant NYPD officers did not remove Plaintiff's handcuffs.

39. Eventually, later that morning, Plaintiff was interviewed by a doctor and/or supervisor and released from the hospital without being admitted, and without any treatment being indicated or ordered.

40. Plaintiff suffered personal injury as a result of the excessive and unjustified force inflicted by defendant police officers, including a very painful torn Anterior Cruciate Ligament ("ACL"), and damage to Plaintiff's hand, and suffered pain and bruising throughout the body and pain and swelling to the knee and hand.

41. Plaintiff's pets, his dog, Rawlin, and his pet iguana, Luna were forcefully seized from Plaintiff's apartment and suffered injury as a result.

**GENERAL ALLEGATIONS**

42. Plaintiff was not in violation of any laws or ordinances on the date, time and place in question.

43. Plaintiff was asleep in his bed during the hours before the entry and attack by the defendant police officers.

44. There was no unreasonable noise or other nuisance emanating from Plaintiff's apartment during, and in the hours before the incident.

45. There were no other persons in Plaintiff's apartment with Plaintiff at the time of the incident.

46. Plaintiff did not assault, menace, strike, kick, push, shove, coerce, or have any physical contact with, in any way, nor did he attempt to assault, menace, strike, kick, push, shove, coerce, or attempt to have physical contact, in any way, any defendant police officers or any persons during the incident.

47. Plaintiff did not resist arrest or obstruct in any lawful official act or police or governmental function.

48. The defendant officers refused to reveal their names, badge numbers, precincts, or any other identifying information that would enable Plaintiff to identify said defendant police officers.

49. At all times during the events described, the defendant police officers were engaged in a joint venture. The individual defendants assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiff.

50. During all of the events described, the defendant police officers acted maliciously and with intent to injure Plaintiff.

51. Defendants had no probable cause to arrest Plaintiff, let alone reasonable suspicion that Plaintiff was engaged in any criminal activity.

52. Defendants had no basis for transporting Plaintiff to a psychiatric facility, as Plaintiff was not suffering from any psychiatric episode or manifesting any symptoms of any psychiatric trouble.

53. Rather, the basis of defendant police officers' decision to transport Plaintiff to a psychiatric facility was to create a justification for their unlawful and excessive use of force against a totally compliant Plaintiff.

54. The individual defendant police officers acted under pretense and color of state law in their individual and official capacities and within the scope of their employment. s Said acts by said defendant police officers were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendant officers acted maliciously, willfully, knowingly, and with the specific intent to deprive Plaintiff of his rights.

55. As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

    a) Violation of Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be protected against warrantless entry into his home;

    b) Violation of Plaintiff's rights, pursuant to the First Amendment to the United States Constitution to videotape the defendant police officers;

    c) Violation of Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from the destruction of and seizure of his property, including his beloved pets;

    d) Violation of Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from excessive use of force;

    e) Violation of Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unlawful arrest;

    f) Violation of Plaintiff's rights, pursuant to the Fifth and the Fourteenth Amendments to the United States Constitution, to Due Process of Law;

    g) Fear, embarrassment, annoyance, humiliation, distress, frustration, extreme inconvenience and anxiety;

    h) Personal injury

    i) Loss of Time

    j) Loss of Liberty.

## FIRST CLAIM
### (UNLAWFUL ENTRY UNDER FEDERAL LAW)

56. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

57. On the above incident date, defendant police officers Defendants Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and *"John Does" 1-3* entered Plaintiff's home without a search warrant, an arrest warrant, or probable cause or any reasonable suspicion that Plaintiff had committed or was in the process of committing a crime.

9

58.     Accordingly, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3* are liable to Plaintiff for Unlawful Entry under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

59.     As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## SECOND CLAIM
### (UNLAWFUL SEIZURE UNDER FEDERAL LAW)

60.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

61.     On the above incident date, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3* damaged Plaintiff's personal property by breaking windows and doors, and by carelessly upending and damaging furniture and personal property;

62.     In addition, the above-named defendants also forcefully seized a cellphone from Plaintiff's hand that Plaintiff had been using to video-record said defendants;

63.     In addition, the above-named defendants caused a video-recording Plaintiff had made, depicting defendants' actions, to be deleted;

64.     In addition, the above-named defendants also forcefully seized a *second* cellphone from Plaintiff's hand that Plaintiff had been using to video-record said defendants;

65.     In addition, the above-named defendants caused a *second* video-recording Plaintiff had made, depicting defendants' actions, to be deleted;

66. In addition, the above-named defendants also caused a dart to be fired at Plaintiff's pet dog, used a wire noose around the dog's neck, seized and removed the dog from Plaintiff's home, and placed the dog in the pound, where it contracted kennel cough before being rescued by Plaintiff;

67. In addition the above-named defendants also seized and injured Plaintiff's pet iguana, Luna, causing the loss of Luna's tail, and seized and removed Luna from Plaintiff's home, and caused Luna to be placed with the ASPCA, before it was rescued by Plaintiff;

68. Accordingly defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3* are liable to Plaintiff for Unlawful Seizure under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

69. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## THIRD CLAIM
### (FIRST AMENDMENT VIOLATIONS UNDER FEDERAL LAW)

70. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

71. On the above incident date, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3,* forcefully seized one, then another cellphone from Plaintiff's hand that Plaintiff had been using to video-record defendants' illegal and unconstitutional actions.

72. The above-mentioned defendant police officers seized said cellphones in order to prevent Plaintiff from documenting their actions.

73. The above-mentioned defendant police officers deleted, or attempted to delete the video-recordings that Plaintiff had just made and which documented some of the illegal and/or unconstitutional actions by the defendants.

74. Accordingly, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3* are liable to Plaintiff for violating his expressive rights, extending to his right to document the actions of the police, pursuant to 42 U.S.C. § 1983; and the First Amendment to the United States Constitution.

75. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## FOURTH CLAIM
### (UNREASONABLE USE OF FORCE UNDER FEDERAL LAW)

76. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

77. On the above incident date, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does*" *1-3*, used force upon arrested Plaintiff that was objectively unreasonable.

78. The individual defendant officers did not have an objective and/or reasonable basis to use *any* degree of force against Plaintiff, since Plaintiff was not breaking any laws, was unarmed, compliant, and did not resist at all.

79. Yet, the above-mentioned defendant police officers *did* use force against Plaintiff; pulling him off his bed, slamming him onto the ground, punching, kicking, stomping, kneeing, squishing, restraining, and handcuffing him: a use of force that was unreasonable.

80. Those defendants who did not touch Plaintiffs but witnessed the unlawful conduct, but failed to intervene and protect Plaintiffs from this conduct are also liable to Plaintiffs.

81. Accordingly, Accordingly, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does" 1-3* are liable to Plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

82. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## FIFTH CLAIM
### (FALSE ARREST UNDER FEDERAL LAW)

83. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

84. On the above incident date, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does" 1-3,* falsely arrested Plaintiff without an arrest warrant, probable cause, or any reasonable suspicion that Plaintiff had committed or was in the process of committing a crime.

85. Accordingly, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and "*John Does" 1-3* are liable to Plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

86. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

### SIXTH CLAIM
### (FAILURE TO INTERVENE UNDER FEDERAL LAW)

87. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88. On the above described incident date, some of the defendant police officers did not have *direct* contact with Plaintiff but had a reasonable opportunity to observe and to prevent the violations of Plaintiff's constitutional rights by their fellow officers, but nonetheless, failed to intervene.

89. Accordingly, those defendant police officers are liable to Plaintiff for failing to intervene to prevent the violation of Plaintiff's Constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

90. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

### SEVENTH CLAIM
### (CONSPIRACY UNDER FEDERAL LAW)

91. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

92. On the above incident date, after defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and *"John Does" 1-3* entered Plaintiff's apartment and seized Plaintiff, said defendant officers conspired among themselves to falsely state to medical personnel that Plaintiff was "emotionally disturbed" notwithstanding the absence of any behaviors on Plaintiff's part to justify that description.

93.     Said defendant police officers conspired to make false statements to medical personnel in an attempt to justify the severe beating they had just administered to Plaintiff notwithstanding the lack of probable cause to arrest him, and the lack of any basis at all to use *any* degree of force against Plaintiff.

94.     Defendant police officers did, in fact, make false representations to responding medical personnel that Plaintiff was "emotionally disturbed".

95.     As a result of said false statements to medical personnel, Plaintiff, who was not evincing any signs of emotional disturbance at all, was nonetheless seized and transported to the Bellevue hospital psychiatric ward, where he remained for several hours, some of that time in handcuffs.

96.     In addition, the above-named defendant police officers conspired among themselves to delete the cell-phone video footage Plaintiff had made documenting their illegal and unconstitutional actions after they had snatched the phone out of Plaintiff's hands.

97.     Two of the above named defendant police officers discussed the video footage with one officer ordering the other to "delete it".

98.     Accordingly, defendant police officers Humann, Mondone, Hayesman, Gravitch, Miraglia, Craft, Norman, McGee, Coll, and *"John Does" 1-3* are liable to Plaintiff for conspiracy under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

99.     As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a jury trial and the following relief, jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and,

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: Brooklyn, New York
FEBRUARY 13, 2020

Respectfully submitted,

/S/ KENNETH F. SMITH

Kenneth F. Smith, PLLC
16 Court Street, Suite 2901
Brooklyn, NY 11241
(646) 450-9929
(646) 514-4524 (FAX)
*Counsel for Plaintiff Matthew Kreek*

16